Good morning, everyone. We will start with our first case of Royal Insurance v. Latrobe Construction, Mr. Long. Good morning, Your Honors. May it please the Court, my name is Louis Long, Counsel for Latrobe Construction in these cross appeals. I've reserved five minutes of my time for rebuttal. That request will be granted. Thank you, Your Honors. There are quite a few issues on our plates this morning. If I may, I would like to concentrate my argument on the two points which I believe are most controlling from Latrobe's point of view. If I have sufficient time in my principal argument this morning, I'll address the issue relating to the admissibility of Mr. Cimenti's evidence on damages. The issues which I believe are controlling from Latrobe's perspective in this case, Your Honors, concerns the treatment of the stipulation that the parties entered into a few days before trial. What in heaven's name does that stipulation mean? Now, it says in one place the parties stipulate that there is sufficient evidence to satisfy Latrobe's burden. Let me say in Part 4, Royal does not admit that it acted unreasonably. What does that mean? Let me try to explain, Your Honor. In order to understand the stipulation, I think it helps for the Court to understand the law of the case that the District Court adopted here. Yes, Your Honor. And under the Liberty Mutual v. Marty's Express case, initially a policyholder has a burden, albeit a light burden, to introduce some evidence of wrongful claims handling. The stipulation, under Liberty Mutual, once the insured satisfies that minimal burden, the burden of production, as well as the burden of persuasion, transfers to the insurance company. Isn't Paragraph 4 inconsistent with that? No, Your Honor, it's not in this respect. The parties stipulated that Latrobe met its initial but light burden here. That's the key factor. By meeting that initial burden, by stipulation, by agreement of the parties, the insurance company assumed the responsibility of producing evidence, and it assumed the risk of non-persuasion. Now, to specifically address Your Honor's question about Paragraph 4 and why there's no inconsistency. On the one hand, by agreeing that Latrobe met its initial burden, one could say that the insurance company seemed to be admitting that there was evidence of its wrongdoing. It's our interpretation, and we submit the proper interpretation of Paragraph 4, that Paragraph 4 acknowledged that Royal was not conceding its wrongdoing. Otherwise, it's nonetheless, it still had the burden of producing evidence, and it still bore the risk of non-persuasion. It didn't say that. No, that's correct. The magistrate just interpreted it that way, notwithstanding. Did he not? No, I don't believe he interpreted it that way at all, Your Honor. How did the magistrate judge, how did Judge Caeza interpret it? Well, I believe Judge Caeza misinterpreted the stipulation in two important respects. Number one, he significantly narrowed the scope of the stipulation by interpreting it to apply only to 14 particular claims. This case dealt with 21 claims. Yeah, but didn't Judge Caeza basically find that the expert for Royal testified that he reviewed all 21 cases? He saw no problem with the seven in dispute here. And I realize that statement appears in Judge Caeza's decision, and it's a cornerstone of Royal's argument here, but I believe that it takes Mr. Weber's testimony out of context. All right, how do you categorize Mr. Weber's testimony then? Well, Mr. Weber testified on direct examination that there was no mishandling in any of the claims. However, it's important to look at Mr. Weber's testimony in connection with his answers on cross-examination. At the very beginning of his cross-examination, and this is found at pages 713 through 716 of the appendix, Your Honors, Mr. Weber made it clear at those pages, 713 through 716, that he had only reviewed the same 14 claims files that had been reviewed by Latrobe's expert. And most tellingly, on page 716 of the record, and I apologize if I don't have the quote written down exactly verbatim, but Mr. Weber said, I stopped looking at the files she did not mention. I believe that's very important because it makes clear then that when Mr. Weber testified on direct examination, that he had seen no evidence of mishandling of the claims files, that he was really only referring to the same universe of 14 claims files that had been addressed by Ms. Haley. The statement could have been technically correct because he didn't look at the files. He obviously didn't see any evidence of mishandling. Well, but the point is, he only saw 14. I understand. And under the stipulation, because Royal bore the burden of production of evidence as to the other seven claims files, that was improper. Royal had the burden of proving that it exercised proper claims handling as to all 21 of the claim files. And it only produced evidence that it had properly handled 14. I'm sorry. Okay, what's your second issue that you wanted to address? The second point concerning stipulations was that the language of the stipulation is clear. And Royal never once asked for relief from the stipulation. The stipulation in five places says that it applies to 21 claim files. The number 21 appears in each of the four paragraphs of the stipulation. There's no ambiguity. The district court found none. Royal never argued until coming to this court that there was any ambiguity in the operation of the stipulation. All right. in 10 of 14 cases. That's correct, Your Honor. Which I also submit undercuts Mr. Weber's testimony that there was no evidence of mishandling that he saw. In fact, the district court found that there was mishandling on four of the 14. If you're correct on your categorization of the record, what should have the court then done at the damage stage? Well, but before we get to the damage stage, you have to keep in mind, Your Honor, that this was essentially a bifurcated case. I understand. And the district court made findings only on the 14, splitting them 10 and 4, as Your Honor mentioned. What do you want us to do? You want to send this back? We do, Your Honor. We want you to send it back with direction that there be a finding against Royal on the seven claims files that it had the burden of proof and the risk of non-persuasion on. Even if we accepted what you're saying, would it be fair to send it back and say you got a fine for Latrobe on this? If what was going on was nothing more than a misunderstanding by the magistrate judge about what the parties had agreed to do. In other words, you read the magistrate judge's opinion and it appears that the magistrate judge is saying that you abandoned your claim as to those other seven. No. I'm not asking you whether you did or not. I'm saying that's what it looks like the magistrate judge was concluding, doesn't it? Well, I think he took that position because he chose to construe the stipulation narrowly. You did nothing. You did nothing to come forward with any kind of information or evidence and let that magistrate judge believe that those weren't in the case when in fact now you're taking the position they were and it's only because Royal had the burden and didn't do anything that you should win. On the liability side, Your Honor, we did not have any burden. Once Royal stipulated that we met our initial minimal burden under Liberty Mutual v. Martins Express, Latrobe had no further burden on that issue. I understand your legal position. I'm not discussing that with you. I'm trying to get at your point with respect to relief. Yes, Your Honor. The relief you're saying you're entitled to is a reversal. What I'm asking you is when we read the discussion by the magistrate judge and see the magistrate judge saying almost in these words, everyone agreed that those were not in the case. No, everyone did not agree, Your Honor. At all relevant times, it has been the court and the party's understanding that review of the individual cases would be restricted to the 14 files discussed in Latrobe's report. Right. That's what he said. Right. So I'm not asking whether as a factual matter you agree. I'm asking whether it wouldn't be appropriate if we agreed with you to vacate and send it back as opposed to reversing. Well, there would definitely need to be a remand. Let me approach it this way if I may. Our strongest position is we would want you to make a finding in our favor on liability. But if you won't make a finding in our favor on liability as to those seven omitted claims files, for lack of a better characterization, then we certainly would ask for a remand on liability as well. At a minimum, there would need to be a remand on damages because when we got to the Phase 2 hearing, there was no evidence introduced as to damages on those seven files that Magistrate Judge Chiasa took out of contention, if you will, at the damages hearing. Did you intend to do so? Did you tell the court you wanted to use evidence as to damages? On those seven other claims files? We were foreclosed from that, Your Honor, because he had already ruled against us on liability. Shouldn't you bring to the judge's attention that, Your Honor, I can't see in the record where you really disagreed with the trial jury. With all due respect, Your Honor, we do disagree, but we were playing by the rules. When we had the Phase 2 hearing, the Phase 2 hearing was only concerning the 14 claims files for which Magistrate Judge Chiasa made specific findings. Mr. Long, I think we understand you on that point. Why don't we hear from Mr. Fabian and then we'll have you back on rebuttal. Thank you, Your Honor. Okay. Mr. Fabian. Good morning, Your Honor. Thank you. Your Honor, the district court interpreted the stipulation in, I think, a common sense manner. It said the parties agreed that this initial threshold burden is met. Let's proceed to the next step where Royal has to overcome that initial burden. It's just common sense, and the district court said as much. There was never any intention on Royal's part to abandon its ability to approve proper claims handling as to claims that were never even criticized. Is Mr. Long's categorization of Mr. Weber's testimony at page 716 accurate, that he acknowledged that he didn't review those seven files? In answer to that, Your Honor, I'd like to quote from Mr. Weber's testimony at page 1982 of the supplemental appendix. He said, I don't believe they mishandled the files. I thought they handled the files appropriately. I did not see any evidence of bad faith in the file handling on the files that I reviewed. As I indicated … The files that I reviewed. Now, if he only reviewed 14, that's an accurate statement. If I could continue, Your Honor. Yes, you may. As I indicated, I initially reviewed 22 files, and on one of the 22, there had been no criticism raised whatsoever. But I didn't know that until after I looked at the whole file. Your Honor, he looked at all 21. He testified that he found no claims mishandling as to any of the 21. I'm sorry. I'm afraid. Let me read you something from appendix 917 to 920, just sort of skipping around in there. Sure. Actually, going to 920, this is the court speaking. Gentlemen, this is what we're dealing with here. We're dealing with very, very narrow issues. I believe a very narrow set of facts here that relate to a very small number of cases. I believe 14. Mr. Gordon, there are 21 cases all told, comma, 14 cases. The court interrupts. That we're hearing testimony about. Mr. Gordon, yes, that's it. Now, it sounds like there's discussion there on the record, and testimony is only going to be taken as to 14. I agree, Your Honor. I agree with the district court that it was everybody's understanding that all that was in play was the 14. Okay. So why don't you address your opponent's argument then that there are really 21 here and that it was just error to do what the Mansory Church did. The parties, actually, Look-Trobe identified initially 21 cases that it wanted to investigate. So in a broad sense, the universe of cases at issue of files at issue in the case was 21. It, Look-Trobe, only adduced affirmative evidence that 14 had been mishandled. My opponent is arguing that as to the seven that they didn't even criticize, they should win because we didn't understand that we had to affirmatively prove proper claims handling even in the absence of any allegations of mishandling.  I don't think so, Your Honor. Well, it says we're going to be governed by this liberty mutual format and that the burden in the first instance, minimal though it might be, would be on Look-Trobe, but that you've decided to forego that. You accepted in writing you've met your burden. Burden shifts to us. We've got the responsibility to rebut that. What does the stipulation mean if it doesn't mean that? Well, that's where I think paragraph four comes in, Your Honor, because I think in the particular situation we have here, paragraph four creates an inconsistency with the position that you just articulated. Are you saying it's ambiguous? We argued both. I actually don't think it's ambiguous. I think that paragraph four trumps paragraph one, but at worst, it's ambiguous. Who wrote this stipulation? I wasn't involved in the case back then, Your Honor. I'm sorry I can't tell you. It's not a model of clarity. But, again, I'll go back to what the district court did and look at common sense. I mean, the purpose of stipulations, the Marty's Express case that La Trobe relies on, the cases that La Trobe cites in its brief all say that the purpose of stipulations is to promote judicial efficiency so that the parties in the court aren't burdened with hearing testimony on issues that truly aren't at issue. I mean, the interpretation that's being advanced here is just so contrary to that, that it just can't be what the parties intended. And it can't be what the stipulation says, particularly in light of paragraph four. Did they argue at any point during the trial to the magistrate judge that, hey, look, there's seven claims here, that they raised that issue? In other words, that it wasn't just limited to 14? Was that raised below? Was the judge made aware of that? As far as I'm aware, Your Honor, and if counsel disagrees, I'm sure he'll tell you that. As far as I'm aware, the first time that this issue, La Trobe's position, that it expected to win on those seven files came up was when it filed its proposed findings, effect, and conclusions of law after the phase one trial. That is the first time it came up. And interestingly, Mr. Long said that we never asked for relief from the stipulation. Number one, we entered into a stipulation. We had an understanding of what it meant. It's not immediately clear to me why we would expect relief from that stipulation. Let me ask you a question about paragraph four. You say it trumps paragraph one. I mean, I agree with you that there ought to be common sense here. But maybe I just don't understand this mutual thing. Can you help walk me through it? I'll try. I understood from the stipulation that both parties were agreeing that there's a burden-shifting format here, and ultimately the burden of persuasion was going to be resting on La Trobe if it was going to be alleging there was a problem with clean handling. But that you agree, you, your client, that the first step was a gimme. It was done. It was already shifted. And by paragraph four's reservation, all that was being said was, we agree that that burden of moving forward with the evidence is moved to us, but we don't agree that that ends your case. We still have an opportunity and a right. Here's what paragraph four says in total. By entering into this stipulation, Royal does not admit that it acted unreasonably or with bad faith to any degree. In other words, we're not giving up the whole case. We're just giving you the first step. Now, why isn't that the consistent way to read the language that the parties themselves chose? Because the practical effect of adopting the position that La Trobe is taking is that Royal would have admitted that it mishandled seven files. That's the practical effect of that interpretation. All it did was stipulate that the initial burden was met. And if that's true, what? If that's true and La Trobe puts on no evidence of claims mishandling, then the stipulation applied in this manner is tantamount to an admission that Royal mishandled seven files. And that can't be because that contravenes paragraph four. That can't be because you lose, I guess, is what you're saying, right? No, that can't be because that is then contrary to paragraph four, Your Honor. Well, you offered evidence, general evidence of proper handling. Well, Your Honor, I think the testimony that I just quoted from Mr. Weber is not general evidence. That specific evidence is the 21 files. That's not general evidence about the 800 and some different files that were at issue in this case. That's specific evidence. The magistrate judge characterized it as general evidence. Did he not? Your Honor, I'm not sure that the magistrate judge even addressed that particular testimony. Again, if I'm mistaken, I apologize. I think he was relying on the general testimony as to all 800. I do not believe that he addressed the particular language that I just quoted. Mr. Fabian, address the issue of why you're entitled as a matter of right to prejudgment interest. I'd love to, Your Honor. Thank you. Okay. I think the Court and the parties agree that the standard is set forth in this Court's decision in Black Gold Coal Corporation. It sets forth four situations under which a party is entitled to prejudgment interest as a matter of right. The third one of those is that a defendant commits a breach of contract to render a performance, the value of which is ascertainable by mathematical calculation from a standard fixed in the contract. Your Honors, we identified the contract language from one of the policies that's typical of all the others. It's a fairly complicated but nonetheless very specific mathematical equation that allows a party to determine what the retrospective premiums are based on the incurred losses. It seems to me, Your Honor, that it fits squarely within the third element of this standard. And the District Court didn't really disagree. I should also mention that we cited two cases in our briefs where courts have held that prejudgment interest is appropriately attached to unpaid retrospective premium amounts because they are specifically calculable and ascertainable by a standard fixed in the contract. What the District Court did do, it made two comments to justify its contrary holding. It said significantly the amount of retrospective premiums only could be and significantly were quite variable based on the amount of incurred losses experienced. Isn't there an incalculable element to the damages here? In other words, you're only entitled to some recovery if there's a loss and there are properly handled files, properly handled claims, right? I mean, how do you deal with the proper handling aspect of recovery and call it a mathematical certainty, a calculable certainty? The proper handling, I think, Your Honor, in this context and generally is really in the vein of a counterclaim. And under Section 354 of the Restatement Second of Contracts, if a breach consists of a failure to pay a definite sum in money, and again the definite sum would be established by the formula that's in the contract, or to render performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due, lest all deductions to which the party in breach is entitled. Your Honors, an unliquidated counterclaim or offset or setoff, whatever you want to call it, does not destroy the fact that the original claim is liquidated and is entitled to prejudgment interest. Probably the clearest case of this factually that I was able to find is a Superior Court case in 1970. It was the Oxford Manufacturing Company case. Yeah. All right. If the Court is aware of it, I won't belabor the point. Mr. Fabian, your red light's on. I'm sorry, Your Honor. And we thank you, and we'll hear from Mr. Long on rebuttal. What about the testimony of the expert, whether you call it general or specific or otherwise? Doesn't that deal with any advantage you gain from having agreed that there was sufficient evidence to satisfy the burden of production? Doesn't that negate any advantage you get from that? As I addressed in my opening argument, Your Honor, I believe superficially it does, but when referring to the transcript pages, which I pointed out to the Court in my opening argument, 713 through 716, I believe that puts the proper spin on Mr. Webber's testimony. That really goes to the weight that would be accorded to the expert's testimony, not its admissibility. Isn't that really for the finder of fact to decide what the expert said? I'm sorry. Perhaps I misunderstood Your Honor's question. Are you referring to the expert's testimony? Admittedly, you could put a spin on the expert's testimony. You're referring to Mr. Webber now? Isn't that really for the finder of fact to decide what that means, what the expert said? Yes, that's true, Your Honor, but I believe that it would be inappropriate for the district court to make a finding which goes beyond what Mr. Webber said when he said that he stopped looking at the 14 files. With regard to Your Honor's... On this seven files, just one last question. Your expert didn't provide any testimony as to these seven files. That's correct, Your Honor, and the reason for that... Okay, give me the reason. The reason for that was, as Mr. Webber acknowledged in his examination, those other seven files when presented during the course of discovery were incomplete. Royal did not produce complete claims files for those other seven files, and that's why neither one of the experts dealt with those seven files in their reports or testimony. This goes back to the question of remand. If we remanded here for findings on those seven cases, it seems to me that would make more sense than remanding, directing that the court enter a finding for your client. A half a loaf is better than none, Your Honor. I understand you're willing to accept a half a loaf, but it just seems that on the facts that that's the best you could hope to attain here. I respectfully disagree based upon our interpretation of the law and the stipulation, but meaning no disrespect to the court, I certainly would accept that relief if that's the only relief we're entitled to. Do you want to talk about the prejudgment interest issue? Yes, Your Honor, but I have one very quick small point still on the stipulation. Do you really want to spend any more time on that? Why don't you go to the prejudgment interest issue? Okay, you've convinced me, Your Honor. With regard to the prejudgment interest, I believe the problem with Royal's position here is that they are not dealing with a liquidated debt. Yes, the method of calculating damages is based upon a formula, but just saying that it's based upon a formula is not sufficient under Pennsylvania law to turn that into a liquidated debt, which would accrue interest throughout all prior proceedings. The amount that Royal was seeking was unclear. The amount that Royal was entitled to was very heavily dependent upon the proofs that parties developed at the time of trial. This is not a situation in which there was a fixed amount due and a counterclaim for something totally entirely different. This is not a matter of they're suing us for widgets and we're counterclaiming for gidgets. These are not two separate things. They're intrinsically intertwined. Whether Royal improperly handled the file and caused damage or whether Latrobe was entitled to credits for the mishandling that Royal committed and found by the district court. These things are woven tightly together. And because they were dependent upon the proof that was addressed at the phase two hearing, it can't be a liquidated debt, although Royal's calculations initially started with a formula. I might also point out that the cases that Royal relies upon dealing with prejudgment interest on retrospective premiums were not Pennsylvania cases. They have not cited a single Pennsylvania case dealing with a retrospective premium in which prejudgment interest was awarded as a matter of right. We do not dispute Royal's entitlement to discretionary interest. We believe that the district court properly exercised its discretion and limited the amount of interest that Royal was entitled to recover.  Thank you, Your Honors. We thank both counsels for excellent arguments and will take the matter under advisement.